## REED v. THE STATE.

No errors of law being complained of, and there being sufficient evidence to sustain the verdict, the court did not err in refusing a new trial.

Argued December 16, 1907.—Decided February 1, 1908.

Indictment for murder. Before Judge Kimsey. Hall superior court. October 22, 1907.

See *Reed* v. *State*, 2 *Ga. App.* 253.

*H. H. Dean* and *Howard Thompson*, for plaintiff in error.

*John C. Hart, attorney-general. W. A. Charters, solicitor-general*, and *Fletcher M. Johnson*, contra.

BECK, J. Jim Reed was indicted for the murder of Hoke Hunt. The tragedy occurred near Chattahoochee Church in Hall county. Services were being held at the church on the day of the killing, and the defendant and deceased were seen to leave the church together and go down the public or "iron-bridge" road. Sometime afterwards the deceased was found lying in "a side road" which led from the said public road, mortally wounded. Otis Light, a witness for the State, testified, "I saw him [the defendant] and Hoke [the deceased] go off down the road. . . The next time I saw Jim Reed . . I saw him coming back into the big road in the direction from where he [the deceased] was found. . . . He was cutting across, coming from the direction of where Hoke Hunt's body was afterwards found. That was about fifteen or twenty minutes after they went off together." Mayfield, a witness for the State, testified that he saw the defendant strike the fatal blow. The witness last named was impeached, but his evidence was corroborated in many particulars by the facts and circumstances testified to by other witnesses. . The defendant in his statement admitted going with the deceased from the church down the "iron-bridge road ten or fifteen steps," but stated that he left the deceased in the road and returned to the church; and he denied all knowledge of the killing. The jury returned a verdict of guilty, with a recommendation to mercy. The defendant made a motion for a new trial, based upon the general grounds, which motion the court overruled, and defendant excepted.

Upon the trial of this case the State submitted for the consideration of the jury the direct testimony of a witness who swore that he saw the defendant commit the homicide at the time and place

and in the manner alleged in the indictment.   This evidence alone
would have been sufficient to authorize the conviction of the de-
fendant (who denied that he did the killing and denied all knowl-
edge of how or by whom it was done) if there had been no evi-
dence introduced to impeach the witness referred to.   There was,
however, strong impeaching testimony produced.   It was shown
that the witness had at the coroner's inquest, after being duly
sworn, denied all knowledge of the material facts to which he tes-
tified so strongly on the final trial which resulted in a verdict of
guilty.   The witness attempted, however, to explain his former
perjury.   His explanation was as weak and lame as any that we
have ever heard offered for such an offense.   And if it were neces-
sary for us to decide whether or not the excuse which he offered
for having committed perjury when he was first called upon to
testify in regard to the killing of the deceased amounted to such a
moral explanation as would authorize the jury to credit his testi-
mony, we would face a grave question.   But it is not necessary
to consider or pass upon that question; because, conceding that
the witness was impeached by proof of former contradictory state-
ments made under oath, he was, as to his testimony given upon the
last trial, so corroborated in several material particulars that the
jury would have been authorized to accept and act upon the tes-
timony given as to the main issue in the case.

Without attempting to state the evidence in detail, it may be
pointed out that the defendant in this case was seen in company
with the deceased, going in the direction of the place at which the
body of the deceased was found a short time afterwards.   Several
witnesses testified that they saw the accused accompanied by the
deceased going along the road from which a "side road" led to
the spot at which the murdered man was found.   The accused was
the last person seen with the deceased; he left the grounds near
the church with the deceased, and he came back without him
shortly afterwards.   A witness named Monroe Hoke swore that
shortly after his return the defendant said that he [the defendant]
"had had a scrap with Hoke Hunt [the deceased]."   An effort was
made, however, to impeach the witness last referred to, by proof
of prior contradictory statements.   Whether this attempt to im-
peach was successful or not was a question for the jury.   Another
witness, a young boy named Carlyle, testified that he saw the com-

mission of the homicide, but stated that he did not recognize the person who struck the deceased, although he was looking at him just as he was in the act of striking his victim. One John Propes testified, in addition to other facts and circumstances, "I do not think John Reed [defendant] and Hoke Hunt were on good terms; on friendly terms. I know they had a rucus a time or two. I know they were not on friendly terms."

After careful consideration of all of the evidence in the case, including the testimony of the witness claimed by the defendant to have been impeached, and that of the witnesses who testified to circumstances tending to throw light upon the question of the guilt of the accused, and all of the facts and circumstances tending to corroborate the witness first referred to, we can reach no other conclusion than that, in consideration of the fact that it is the sole province of the jury to pass upon the facts of the case and the credibility of the witnesses, they were authorized to reach the finding set forth in their verdict. See *Sindy* v. *State*, 120 *Ga.* 202 (47 S. E. 554), and cases cited.

*Judgment affirmed. All the Justices concur.*